**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

CONSERVATION LAW FOUNDATION, INC.,

CHARLES RIVER WATERSHED ASSOCIATION, INC., and

LEOMINSTER LAND TRUST, INC.,

Plaintiffs

v.

MITT ROMNEY, in his official capacity as GOVERNOR OF

MASSACHUSETTS;

JOHN COGLIANO, in his official capacity as SECRETARY OF

TRANSPORTATION; and

LUISA PAIEWONSKY, in her official capacity as

COMMISSIONER OF MASSACHUSETTS HIGHWAY

DEPARTMENT,

Defendants

Case No.:

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

**INTRODUCTION**

1.  This action is a citizen suit brought under Section 505 of the Clean Water

    Act ("CWA"), as amended, 33 U.S.C. § 1365.  Plaintiffs seek declaratory

    judgments, injunctive relief, and other relief with respect to the actions and

    failure to act by various officials of the Commonwealth of Massachusetts, in

violation of §§ 301(a) and 402(p)(6) of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p)(6), that result in discharges, including discharges that contribute to instream exceedance of water quality standards, to waters of the United States from a separate storm sewer system operated by the Massachusetts Highway Department, without a permit.

## JURISDICTION AND VENUE

2.  The Court has subject matter jurisdiction under § 505(a) of the CWA, 33 U.S.C. § 1365(a), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §§ 2201 and 2202 (declaratory judgment).

3.  Pursuant to § 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135, plaintiffs notified defendants of defendants' violations of the CWA, and plaintiffs' intent to sue under the Clean Water Act, by letter dated and postmarked May 4, 2006 (the "Notice Letter").  A true and correct copy of the Notice Letter is attached as Exhibit 1.  Plaintiffs also sent copies of the Notice Letter to the Administrator of the United States Environmental Protection Agency ("EPA"), the Region 1 EPA Administrator, and the Commissioner of the Massachusetts Department of Environmental Protection.

4.  More than sixty days have passed since notice was served, and the violations complained of in the Notice Letter are continuing or are reasonably likely to continue to occur. Defendants remain in violation of the CWA.  Neither

EPA nor Massachusetts has commenced an enforcement action to redress the violations identified in the Notice Letter.

5. Venue is appropriate in the District of Massachusetts pursuant to § 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the separate storm sewer system causing the violations complained of is located in Massachusetts.

## PARTIES

6. Plaintiff Conservation Law Foundation ("CLF") is a non-profit public interest environmental organization with approximately 5,000 members throughout New England.  CLF works to solve problems threatening natural resources and communities in Massachusetts and throughout New England. CLF advocates for the effective regulation of stormwater as well as strategies to reduce and minimize the significant impacts of stormwater pollution.  CLF members live near waters degraded by defendants' storm sewer system, and use these waters for recreational and aesthetic enjoyment. Water quality is critical to CLF's members' use and enjoyment of these waters.  CLF and its members allege that defendants' separate storm sewer system is operating in violation of the CWA, and adversely affects their interests in recreational and aesthetic enjoyment.

7. Plaintiff Charles River Watershed Association ("CRWA") is a non-profit public interest environmental organization.  CRWA's mission is to protect water quality, fish and wildlife habitat, recreational opportunities and scenic values of the Charles River Watershed.  CRWA's members are concerned about the welfare of the Charles River, its natural resources and its

contributing watershed.  Some of its members own real property abutting the Charles River and its tributaries.  CRWA's members use the river, its tributaries, and banks for fishing, canoeing, kayaking, swimming, hunting, hiking, bird watching, photography, passive recreation and education.  Its members value the river's scenic beauty, its wildlife, avian and aquatic habitat, its natural resources and its recreational opportunities.  CRWA and its members allege that Defendants' separate storm sewer system is operating in violation of the CWA, and adversely affects their interests in fishing, swimming, recreation, and aesthetic enjoyment as well as their property interests as adversely affected landowners.

8.  Plaintiff Leominster Land Trust ("LLT") is a non-profit public interest environmental organization.  LLT was established in 1998 to protect and preserve the lands and waters of the Leominster region for their ecological, historic and scenic values.  LLT members live in the vicinity and make recreational use of waters affected by Defendants' pollutant discharges. LLT owns Pierce Pond, land adjacent to and extending into the Nashua River, and some LLT members own land adjacent to and extending into Monoosnoc Brook, all of which are adversely affected by defendants' pollutant discharges.  LLT and its members allege that defendants' separate storm sewer system is operating in violation of the CWA, and adversely affects their interests in fishing, boating, and aesthetic enjoyment of the affected waters as well as their interests as affected landowners.

9. Defendant Mitt Romney is the Governor of Massachusetts.  The Governor is the chief executive officer of Massachusetts and has the ultimate responsibility for ensuring that the state is in compliance with the CWA.

10. Defendant John Cogliano is the Secretary of Transportation, and has responsibility for oversight of the Massachusetts Highway separate storm sewer system, which is responsible for the violations described in this complaint.

11. Defendant Luisa Paiewonsky is the Commissioner of the Massachusetts Highway Department ("MassHighway"), and is responsible for ensuring that MassHighway's separate storm sewer system is operated in a manner consistent with the requirements of the CWA.

## REGULATORY CONTEXT

12. The CWA is the principal federal statute enacted to protect the quality of the Nation's waters.  The stated goal of the CWA is "to restore and maintain the chemical, physical and biological integrity of the Nation's waters."  33 U.S.C § 1251 *et. seq.*, CWA § 101(a)(1), 33 U.S.C. § 1251(a)(1).

13. To be lawful under the CWA, Small Municipal Separate Storm Sewer Systems ("Small MS4s") require a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to § 402 of the CWA, 33 U.S.C. § 1342 and federal regulations.  33 U.S.C. §§ 1311(a), 1342(p)(6). Specifically, EPA regulations state that "[o]n or after October 1, 1994, operators shall be required to obtain a NPDES permit . . . if . . . [t]he

discharge is from a small MS4 required to be regulated pursuant to § 122.32." 40 C.F.R. §§ 122.26(A)(9)(i)(A).

14. The State of Massachusetts has not established a federally approved state NPDES program pursuant to CWA § 402(b), 33 U.S.C. § 1342(b). Therefore, in Massachusetts the NPDES permit program is administered by EPA pursuant to CWA § 402(a), 33 U.S.C. § 1342(a).

15. EPA has adopted the "National Pollutant Discharge Elimination System (NPDES) General Permit for Stormwater Discharges from Small Municipal Separate Storm Sewer Systems"("General Permit"). http://www.epa.gov/NE/npdes/permits/permit_final_ms4.pdf. The General Permit applies to Small MS4s located within Massachusetts.

16. MassHighway's separate storm sewer system meets the regulatory definition of "Small MS4" as follows: "this term includes systems similar to separate storm sewer systems in municipalities, such as … highways and other thoroughfares." 40 C.F.R. § 122.26(b)(16)(iii), *see also* 40 C.F.R. §§ 122.32(a); 122.26(b)(8).  In fact, EPA has specifically identified MassHighway in the General Permit as a Transportation Small MS4 requiring NPDES permit coverage.  General Permit, Part V ("This part applies to state and county agencies who maintain roadways, highways and other thoroughfares in the state including but not limited to **Massachusetts Highway Department** and New Hampshire Department of Transportation") (at p. 29, emphasis added).

17. Small MS4s must either obtain permit coverage under the General Permit or obtain an individual NPDES permit.  40 C.F.R. 122.33.

18. Authorization to discharge under the General Permit begins on the date of receipt of written authorization from EPA subsequent to the MS4's submission of a complete Notice of Intent ("NOI") to EPA.  40 C.F.R. § 122.28(b)(2); General Permit, part I.E.4.

19. NPDES permit conditions must ensure attainment of water quality standards. CWA §301(b)(1)(C), 33 U.S.C. § 1331(b)(1)(C), and 40 C.F.R. § 122.4(d).  Discharges that cause or contribute to in-stream exceedance of water quality standards cannot be authorized under the NPDES General Permit. General Permit I.B.2.(k).

**SEPARATE STORM SEWER SYSTEM FACTUAL BACKGROUND**

20. Defendant MassHighway controls a separate storm sewer system including but not limited to roads with separate storm sewer systems, streets, catch basins, curbs, gutters, ditches, manmade channels, and storm drains designed and used for collecting and conveying stormwater.  This system serves MassHighway's 4,132 miles of roads throughout Massachusetts, as well as the highway support facilities and service areas associated with that highway system.

21. Studies have shown that stormwater runoff contains a wide variety of pollutants, including priority organics, oil and grease, metals, nutrients, organic constituents, suspended solids and pathogens. 64 Fed. Reg. 68722 at 68724/3 – 68731/2.  MassHighway's own Southeast Expressway Best

Management Practices Effectiveness Project demonstrates that its

stormwater contains priority organics (polyaromatic hydrocarbons and

PCBs), oil and grease, metals, nutrients, organic constituents, suspended

solids and pathogens. NPDES Stormwater Management Plan for

MassHighway Owned and Operated Highways (March 2, 2005) at 3-18 to

3-20 accessed at

http://www.epa.gov/ne/npdes/stormwater/assets/pdfs/ma/swmp/MassHighw

aySWMP.pdf ("SWMP") and Effectiveness of Three Best Management

Practices for Highway-Runoff Quality Along the Southeast Expressway ,

Boston, Massachusetts at 2, 51 accessed at

http://pubs.usgs.gov/wri/wri024059/pdfs/wri024059.pdf.

22. Stormwater runoff from roads, facilities and service areas controlled by

MassHighway transports pollutants through MassHighway's separate storm

sewer system into rivers and their tributaries that are navigable waters, or

waters of the United States.  CWA § 502 (7), 33 U.S.C. § 1362(7).

23. MassHighway's separate storm sewer system discharges stormwater to

certain rivers and their tributaries that the Commonwealth of Massachusetts

has characterized as "impaired" because they do not meet water quality

standards due to the impacts of pollutants including priority organics, oil

and grease, metals, nutrients, organic constituents, suspended solids and

pathogens.  CWA §§ 303(d), 305(b); 33 U.S.C. §§ 1313(d), 305(b). SWMP

at 4-14, Figure 4-3.  Massachusetts Year 2002 Integrated List of Waters,

MA DEP CN 125.1, September 2003, accessed at

http://www.mass.gov/dep/water/resources/2002-il1.pdf.  These discharges

include, but are not limited to, discharges from Routes I-95 and I-495 to the

Charles River, which is impaired for priority organics, metals, nutrients,

pathogens, oil and grease, and turbidity; discharges from Routes I-91, I-391,

I-291, 5, 20, 116 and 202  to the Connecticut River, which is impaired for

priority organics, suspended solids and pathogens; and discharges from

Routes 1, 93, and 95 to the Neponset River, which is impaired for priority

organics, metals, nutrients, suspended solids and pathogens.

24. MassHighway's separate storm sewer system discharges pollutants

associated with stormwater.  MassHighway's separate storm sewer system

causes point source discharges to waters that are already impaired due to

pollutants associated with stormwater.  Therefore, point source discharges

from MassHighway's drainage system cause or contribute to in-stream

exceedances of water quality standards.

25. MassHighway's separate storm sewer system requires a NPDES permit

under §§ 301(a), 402(p)(6) and federal regulations.  33 U.S.C. §§ 1311(a),

1342(p)(6); 340 C.F.R. §§122.33 – 122.36.

26. Correspondence between EPA and MassHighway confirms that

MassHighway has an obligation to obtain a permit for discharges from its

separate storm sewer system.  (Letter from Linda M. Murphy, Director,

Office of Ecosystem Protection, U.S. EPA Region I, to defendant John

Cogliano (August 24, 2004) (A true and correct copy is attached as exhibit

2.))

27. MassHighway submitted an NOI under the General Permit dated July 25, 2003 (a true and correct copy of which is attached as exhibit 3). MassHighway was required to submit a permit application by March 10, 2003.  40 C.F.R. 122.26(e)(9)(i).

28. EPA notified MassHighway on February 3, 2004 that its NOI was deficient. (Letter from David Gray,  Environmental Engineer, Office of Ecosystem Protection, U.S. EPA Region I, to Henry Barbaro, Environmental Division, Mass Highway Department (February 3, 2004) (A true and correct copy is attached as exhibit 4.))

29. In a letter dated August 24, 2004, EPA's Linda Murphy notified Defendant Cogliano, the MassHighway Commissioner at that time, that since MassHighway had not yet submitted a complete NOI, "authorization has not been granted for stormwater discharges from your MS4. [F]ailure by MassHighway to submit a complete NOI is a violation of the Clean Water Act." (Letter from Linda M. Murphy, Director, Office of Ecosystem Protection, U.S. EPA Region I, to defendant John Cogliano (August 24, 2004). (exhibit 2.))

30. MassHighway has not been authorized to discharge stormwater from its separate storm sewer system.  In a letter dated June 30, 2006, EPA's Linda Murphy noted certain deficiencies in MassHighway's NOI, and required an amended NOI.  The letter again reiterated that "because MassHighway has not yet submitted a complete NOI, authorization has not been granted for stormwater discharges from its regulated MS4." (Letter from Linda M.

10

Murphy, Director, Office of Ecosystem Protection, U.S. EPA Region I, to

defendant Luisa Paeiwonsky (June 30, 2006) (A true and correct copy is

attached as exhibit 5.))

31. MassHighway continues to discharge pollutants from its separate storm

sewer system to rivers and their tributaries, including those impaired for

such pollutants, without coverage under an NPDES general or individual

permit.

## COUNT I:

32. Paragraphs 1-31 are incorporated herein by reference and pleaded as if fully

set forth.

33. By continuing to discharge stormwater containing pollutants, including

without limitation discharges that contribute to instream exceedance of

water quality standards, from MassHighway's separate storm sewer system

into waters of the United States without authorization under any NPDES

permit since March 10, 2003, defendants have been and are in violation of

sections 301(a) and 402(p)(6) of the Clean Water Act. 33 U.S.C. §§1311(a),

1342(p)(6).

## RELIEF REQUESTED

Wherefore, Plaintiffs respectfully request that this Court grant the following relief:

1. Issue a declaratory judgment that defendants are in violation of §§ 301 and 402 of the

CWA, 33 U.S.C. §§ 1311 and 1342;

2. Issue a declaratory judgment that defendants' stormwater discharges that cause or contribute to in-stream exceedance of water quality standards may not be authorized by the General Permit;

3. Enjoin defendants from discharging stormwater from its separate storm sewer system without an NPDES permit;

4. Enjoin defendants from discharging stormwater from its separate storm sewer system that causes or contributes to in-stream exceedance of water quality standards;

5. Issue an injunction requiring implementation of a comprehensive program to correct defendants' violations which provides for civil penalties in the case of noncompliance;

6. Award plaintiffs their costs, including reasonable attorney's and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

7. Award such other relief as this Court deems appropriate.


DATED this 27th day of July, 2006


RESPECTFULLY SUBMITTED,

CONSERVATION LAW FOUNDATION INC.

CHARLES RIVER WATERSHED ASSOCIATION

LEOMINSTER LAND TRUST

Plaintiffs

By their attorneys

_____

Carol Lee Rawn

BBO No. 559873
Conservation Law Foundation Inc.
62 Summer Street
Boston, MA 02110
617-350-990

_____

Peter Shelley

BBO No. 544334
Conservation Law Foundation Inc
62 Summer Street
Boston, MA 02110
617-350-0990