UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                 )
CONSERVATION LAW FOUNDATION,      )
INC., CHARLES RIVER WATERSHED     )
ASSOCIATION, INC., and            )
LEOMINSTER LAND TRUST, INC.,      )
              Plaintiffs,         )
                                 )
         v.                       )          CIVIL ACTION
                                 )          06-11295-WGY
DEVAL PATRICK in his official     )
capacity as GOVERNOR OF           )
MASSACHUSETTS; JOHN COGLIANO,     )
in his official capacity as       )
SECRETARY OF TRANSPORTATION;      )
and LUISA PAIEWONSKY, in her      )
official capacity as              )
COMMISSIONER OF MASSACHUSETTS     )
HIGHWAY DEPARTMENT,               )
              Defendants.         )
                                 )
                                 )
_____)


MEMORANDUM AND ORDER


YOUNG, D.J.                                      March 4, 2011


I.   **Introduction**

     After long and contentious litigation, the Conservation Law

Foundation ("CLF") moves for the award of interim attorneys' fees

based upon this Court's order of May 11, 2010.  On that date,

this Court stated:

          [I]t's unmistakable that the Conservation Law
          Foundation is a prevailing party in this, in this
          proceeding and it may within 60 days of today's
          date submit its full application for attorneys'

> fees. Not, not to complete, because there may be
> more litigation, but what was necessary to bring us
> to this point. The order that I enter today is
> because of the work, the groundwork that you did.
> I hoped for, I expected compliance. There has not
> been compliance. You prevail. You should be . . .
> compensated for the time.

Conference Tr. May 11, 2010, 4-5, ECF No. 103.

Without CLF's diligent efforts, there would not have been grounds to find that the Commonwealth had not complied with the Clean Water Act, 33 U.S.C. § 1251 <u>et seq.</u> (the "Act"). Because the Commonwealth of Massachusetts, through its knowing acquiescence in bureaucratic inertia, disobeyed this Court's order, this Court awards CLF interim attorneys' fees.

## II. Factual and Procedural Background

The following outline of the factual and procedural background of this case is provided in order to make clear the reasoning behind this Court's May 11, 2010 order.

This case began on July 27, 2006, when CLF, the Charles River Watershed Association, and the Leominster Land Trust filed suit in this Court alleging that the Commonwealth and its administrative agencies had violated the Act by discharging polluted storm water into rivers without the requisite permits.

### A. Statutory and Regulatory Framework

The Clean Water Act's purpose is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To carry out this lofty and

admirable goal, an extremely complex scheme of statutory and
regulatory rules, permits, and licenses has been devised.  Of
particular importance to the case at bar is the National
Pollutant Discharge Elimination System ("NPDES"), 33 U.S.C. §
1342, and its application to Small Municipal Separate Storm Sewer
Systems ("small MS4").  The NPDES permit system allows the
discharge of pollutants but controls "the quantity and
concentration of discharged pollutants as well as the rate of
discharge."  Rhode Island v. Environmental Prot. Agency, 378 F.3d
19, 21 (1st Cir. 2004).

       Under the Act, the Administrator of the Environmental
Protection Agency ("EPA") can authorize states to issue NPDES-
equivalent permits subject to EPA review.  33 U.S.C. § 1342(b).
Massachusetts has not obtained such authorization, so this trial
proceeded within the framework of the EPA's federal regime.  City
of Pittsfield, Mass. v. Environmental Prot. Agency, 614 F.3d 7, 9
(1st Cir. 2010).

       Because the Massachusetts Highway Department's storm sewer
discharge systems are covered by the Act, see 40 C.F.R. §
122.26(b)(16)(iii), and these storm sewer discharge systems
require a general or individual NPDES permit, see 40 C.F.R.
122.33, any release by the systems that violates the water
quality standards set by the EPA is a violation of the Act.  See
33 U.S.C. § 1311(a).  CLF initiated this litigation under this

                                    3

theory.  <u>See</u> Compl. ¶¶ 16-19, 33.

**B.  Pre-Trial Proceedings**

Pre-trial motions successfully narrowed the issues for
trial.  The Commonwealth, through its ongoing negotiations with
the EPA, successfully defeated CLF's allegation that it was in
complete non-compliance.  In January 2006, the EPA and the
Massachusetts Department of Environmental Protection authorized
the Massachusetts Highway Department to "discharge storm water
from its designated Small MS4 in accordance with the provisions
of the Small MS4 permit."  Letter from Stephen S. Perkins,
Director of the Office of Ecosystem Protection, to Louisa M.
Paiewonsky, Commissioner, Massachusetts Highway Department, Jan.
25, 2006.  Upon receipt of this approval, the Commonwealth sought
to dismiss the complaint as moot.  <u>See</u> Defs.' Mot. Dismiss, ECF
No. 18.  This Court denied the Commonwealth's motion on September
11, 2007.

CLF then shifted its theory: it posited that even though the
Commonwealth was granted approval to discharge, it could not do
so without the EPA's approval of a Storm Water Management Plan
("SWMP").  The Commonwealth moved for summary judgment, arguing
that EPA approval of the SWMP was not required by the Act, <u>see</u>
Defs.' Mot. Summ. J., ECF No. 23, but the Court denied that
motion.  The case proceeded to trial on this issue.

## C.    The Trial

The bench trial in this case took place over the course of six days spread between February and May 2008.  At the conclusion of the trial, on May 30, 2008, the Court found in favor of CLF, ruling that the Commonwealth was in violation of certain provisions of the Act's NPDES permit scheme.  The Court instructed the Commonwealth, specifically the Massachusetts Highway Department,[1] to change its SWMP in order to bring it into compliance with the NPDES permit conditions.  A remedial plan was to be submitted to the Court by January 2010, and structural remediation of the SWMP was to take place over the course of five years.  See Trial Tr., Findings and Rulings, May 30, 2008, ECF No. 94-1.

Additionally, the Court found that the Commonwealth had violated the NPDES permit by causing discharges that exceeded instream water quality standards in three specific locations. The Court ordered the Commonwealth to remediate those three sites within a year of the January 2010 submission of the remedial plan.  Following these findings, rulings, and orders, the Court administratively closed the case, subject to reopening on motion by either party.  See Order, ECF No. 85.

---

[1] On November 1, 2009, the Massachusetts Highway Department was integrated into the newly formed Massachusetts Department of Transportation, Division of Highways.  Defs.' Status Report 1 n.1, ECF No. 95.

### D. Post-Trial Proceedings

Following the trial, the parties remained in contact concerning the Commonwealth's compliance with this Court's orders. See Pls.' Mot. Reopen and Request Status Conference 2-3, ECF No. 87. CLF, believing that the Commonwealth was not on target to comply with the Court's instructions, moved in October 2009 to reopen the case. Id. At CLF's request, the Court held a status conference on November 4, 2009, at which the Commonwealth assured the Court that it was complying with the Court's orders.

CLF continued to be dissatisfied with the Commonwealth's progress and petitioned this Court to issue a further order regarding the Commonwealth's compliance. See Pls.' Renewed Mot. Entry Order, ECF No. 99. The Court agreed with CLF that the Commonwealth had not taken adequate steps to comply with the Court's orders; in fact, the Commonwealth had made no definitive plans to remediate the three critical sites and had merely incorporated them within a more leisurely general plan of remediation. At a status conference on May 11, 2010, this Court ordered the Commonwealth to submit, within three weeks, a detailed engineering plan concerning the three specific areas at issue, to have equipment at those three sites by June 8, 2010, and to submit a detailed report setting forth its compliance by June 8, 2010. The Court also instructed the Commonwealth that further failure to comply with its orders would result in

sanctions.  <u>See</u> Conf. Tr., May 11, 2010.

Following this May 11, 2010 status conference, CLF filed the present motion for attorneys' fees.  <u>See</u> Pls.' Mot. Interim Award Costs Litigation, ECF No. 117.

**III. ANALYSIS**

**A.   Attorneys' Fees & the Clean Water Act**

**1.   Legal framework**

Under the Act, "prevailing" or "substantially prevailing" parties are entitled to be compensated for their litigation costs and attorneys' fees.  33 U.S.C. § 1365(d).  A prevailing or substantially prevailing party is one who has "succeeded on 'any significant issue in the litigation which achieves some of the benefit' sought."  <u>Earth Island Inst., Inc.</u> v. <u>Southern Cal. Edison Co.</u>, 838 F. Supp. 458, 464 (S.D. Cal. 1993) (quoting <u>Hensley</u> v. <u>Eckerhart</u>, 461 U.S. 424, 433 (1983)).  Differently stated, under the Act, a "'prevailing party' is one that achieves 'a material alteration of the legal relationship of the parties.'"  <u>Greenfield Mills, Inc.</u> v. <u>Carter</u>, 569 F. Supp. 2d 737, 743 (N.D.Ind. 2008) (quoting <u>Buckhannon Bd. & Care Home, Inc.</u> v. <u>West Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 604 (2001)).

An award of attorneys' fees during the pendency of litigation is the "exception rather than the rule."  <u>Greenfield Mills</u>, 569 F. Supp. 2d at 744.  Although the First Circuit has

7

stated that the award of attorneys' fees need not "await full litigation of a case and the entry of a final judgment," Hutchinson ex rel. Julien v. Patrick, No. 10-1268, 2011 WL 540538, at *7 (1st Cir. Feb. 17, 2011), this Court is mindful of the need to avoid piecemeal litigation, c.f. Appeal of Licht & Semonoff, 796 F.2d 564, 572 (1st Cir. 1986). Nonetheless, the central inquiry is "whether the plaintiffs, at this stage, can be said to have succeeded on significant claims affording them some of the desired relief." Hutchinson, 2011 WL 540538, at *7.

The Sixth Circuit has also articulated a helpful description of the law concerning an award of interim attorneys' fees:

> Interim attorney fees awarded during the pendency of litigation are permissible and thus within the authority of the district court when the court has entered a concrete order that "'determines substantial rights of the parties,'" meaning "when a party has prevailed on the merits of at least some of his claims." Hanrahan v. Hampton, 446 U.S. 754, 757-58 (1980) (per curiam) (quoting Bradley v. Richmond Sch. Bd., 416 U.S. 696, 723 n.28 (1974)). Interim fees are "especially appropriate" when a party has prevailed on "an important matter" in a case, even if the party ultimately does not prevail on all issues. Hampton, 446 U.S. at 757 (quoting S. Rep. No. 94-1011, at 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5912). The Supreme Court has declared that, particularly in complex cases of long duration, delaying a fee award until the conclusion of litigation "would work substantial hardship on plaintiffs and their counsel" and discourage the institution of actions that Congress intended to encourage by passage of attorney fee statutes. Bradley, 416 U.S. at 723.

Webster v. Sowders, 846 F.2d 1032, 1036 (6th Cir. 1988).

### 2. Entitlement to attorneys' fees

Although CLF did not prevail on the theory that it advanced

at the start of the case, it is nonetheless a prevailing party.
CLF achieved it ultimate goal: it obtained a Court ruling
mandating remediation of certain storm water sites and
instructing the Commonwealth to develop a plan to prevent future
violations.   The Court's rulings and orders detailed above –
which were brought about as a result of CLF's litigation – have
significantly changed the legal relationship between the parties.
See Tri-City Cmty. Action Program, Inc. v. City of Malden, 680 F.
Supp. 2d 306, 312 (D. Mass. 2010) (Gertner, J.); see also
Buckhannon Bd. & Care Home, Inc., 532 U.S. at 604.   CLF certainly
"ha[s] succeeded on significant claims affording [it] some of the
desired relief."   Hutchinson, 2011 WL 540538, at *7.

     The award of interim attorneys fees here is particularly
appropriate due to the case's duration and complexity.   Were no
fees awarded at this time and CLF forced to wait indefinitely for
a final judgment in order to receive compensation for its
expenses, future plaintiffs would be discouraged from pursuing
this type of action because of the great toll such lengthy
litigation takes on institutional resources.   See Greenfield
Mills, 569 F. Supp. 2d at 744.   Moreover, the Commonwealth has
needlessly prolonged this litigation through its failure to
comply with the instructions issued by this Court and with the
assurances it made to this Court at the conclusion of trial.
This noncompliance led to the re-opening of this case and the

expenditure of further resources by CLF.  Thus, this Court holds that attorneys' fees are appropriate and allows CLF's motion for interim attorneys' fees.

**B.    Determination of Reasonable Attorneys' Fees**

It is well settled that the lodestar approach is the proper method to calculate attorneys' fees.  <u>Marrotta</u> v. <u>Suffolk Cnty</u>., 726 F. Supp. 2d 1, 4 (D. Mass. 2010).  This approach requires the calculation of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  <u>Gay Officers Action League</u> v. <u>Puerto Rico</u>, 247 F.3d 288, 295 (1st Cir. 2001) (quoting <u>Hensley</u>, 461 U.S. at 433).  The movant bears the burden of establishing and documenting the hours expended and the hourly rates charged.  <u>Torres-Rivera</u> v. <u>O'Neill-Cancel</u>, 524 F.3d 331, 340 (1st Cir. 2008).

CLF has submitted to this Court affidavits and billing records of the attorneys who have worked on this litigation. These affidavits document the hours worked and the rates charged. Ultimately, CLF requests: 1) $1,025,103 for 2,748 hours worked by CLF attorneys and staff at rates between $120 and $660 per hour, Kilian Decl. ¶¶ 16-18, ECF No. 119; 2) $415,968 for 1114 hours worked by Shearman & Sterling attorneys at rates between $190 and $580 per hour, Padilla Decl. ¶¶ 4-5, 8, ECF No. 120; 3) $196,935 for 412.5 hours worked by CLF volunteer attorney Wendy Miller at rates between $470 and $510 per hour, Miller Decl. ¶ 5, ECF No.

122; and 4) $71,887.50 for 266 hours worked by CLF volunteer attorney Leah Kelly at $270 per hour, Kelly Decl. ¶ 6, ECF No. 121.

The Commonwealth objects to these requests, arguing that they are excessive and would constitute a windfall for CLF. Defs.' Mem. Opp'n Pls.' Mot. Interim Award Costs Litigation 8, ECF No. 133. Additionally, the Commonwealth cautions the Court that the award of attorneys' fees against a "public entity . . . performing an essential job at a time of strained resources" should be strictly scrutinized. Id. (quoting LaPlante v. Pepe, 307 F. Supp. 2d 219, 223 (D. Mass. 2004) (Gertner, J.)). This Court is mindful of these considerations in making the following calculations.

### 1. Reasonable hours expended

When calculating appropriate attorneys' fees using the lodestar method, "only hours that were reasonably expended on the litigation ought be included." Dixon v. International Bhd. of Police Officers, 434 F. Supp. 2d 73, 78 (D. Mass. 2006) (citing Hensley, 461 U.S. at 433). Because only reasonably expended hours are to be used in the calculation, this Court may reduce the number of hours billed if inadequately documented or "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 433-34. Here, CLF has submitted contemporaneous time records for all of its attorneys who worked on this litigation.

Additionally, the New York law firm of Shearman & Sterling, which participated in the trial portion of this lawsuit, has submitted its contemporaneous time records. The total hours claimed by each attorney and staff member and the requested fee for each attorney are summarized in Table 1 below.

Table 1

| Name | Position | Hours | Fee Amount |
|---|---|---|---|
| **Conservation Law Foundation** | | | |
| Carol Lee Rawn | Staff Attorney | 193.25 | $70,437.50 |
| Chris Kilian | Senior Attorney | 1063.92 | $620,040.80 |
| Cynthia Liebman | Staff Attorney | 797.01 | $241,499.50 |
| Rebekah Pazmino | Paralegal | 79.50 | $12,720.00 |
| Summer Zeh | Legal Intern | 97.00 | $10,670.00 |
| Yan Au | Staff Assistant | 137.50 | $23,325.00 |
| Danica Anderson | Legal Intern | 173.50 | $20,820.00 |
| Omar Gonzalez-Pagan | Legal Intern | 119.00 | $14,280.00 |
| Bryan Berge | Legal Intern | 34.00 | $4,420.00 |
| Adrienne Bossi | Legal Intern | 53.00 | $6,890.00 |
| Leah Kelly | Volunteer Attorney | 266.25 | $71,887.50 |
| Wendy Miller | Volunteer Attorney | 412.50 | $196,935.00 |
| Subtotal – Conservation Law Foundation | | | $1,293,925.30 |
| **Shearman & Sterling** | | | |
| Christopher Halfnight | Associate | 138.90 | $45,142.50 |
| John Padilla | Associate | 314.40 | $162,630.00 |
| Kathleen Schmid | Associate | 162.20 | $52,715.00 |
| Owen Russell | Associate | 134.60 | $70,665.00 |
| Robert Whitener | Associate | 115.90 | $37,695.00 |
| James Diaz | Legal Assistant | 248.00 | $47,120.00 |
| Subtotal – Shearman & Sterling | | | $415,967.50 |
| **Total Requested Fees** | | | **$1,709,892.80** |

a.   **Mathematical error**

The Commonwealth brings the Court's attention to discrepancies in Attorney Chris Kilian's time log, noting that the total hours claimed is not equal to the sum of the individual entries. After reviewing Attorney Kilian's time log, this Court agrees with the Commonwealth that the arithmetic used in preparing it was faulty. For example, in 2006 Attorney Kilian claimed a total of 60.35 hours worked. Kilian Decl., Ex. A, at

8. But the sum of each entry totalled 12.58 hours. Id.
Recalculating all of Attorney Kilian's hours based on the individual entries in his time log, the total number of hours that he worked on the litigation decreases markedly. Instead of the claimed total of 1063.92 hours, Attorney Kilian actually logged 295.92 hours, a difference of 768.06 hours.[2]

### b. Unsuccessful claims

The Commonwealth argues that the total number of hours compensated ought not include the hours spent on unsuccessful claims. Defs.' Mem. Opp'n 9-10. A Court may deduct time spent working on "unsuccessful, severable claims." Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 339 (1st Cir. 1997). But "the Court is not obliged to discount for the unsuccessful plaintiffs and claims, and the Court will not use its discretion to do so because the core facts and the successful core theory dominated the litigation from start to finish." System Mgmt., Inc. v. Loiselle, 154 F. Supp. 2d 195, 209-10 (D. Mass. 2001). CLF's theory of the case evolved and was narrowed by this Court's rulings throughout the litigation. All of the facts found, however, stemmed from the initial allegation that the Commonwealth was releasing "stormwater containing pollutants,

---

[2] By declaration on November 5, 2010, Attorney Kilian acknowledged the miscalculation and affirmed that 295.92 hours was the correct amount of time worked on the litigation. Kilian Decl., ECF No. 139.

including without limitation discharges that contribute to
instream exceedance of water quality standards, from [the
Massachusetts Highway Department's] separate storm sewer system
into waters of the United States without authorization under any
NPDES permit." Compl. ¶ 33.  Because the initial facts alleged
"were interconnected with the common core of facts that
ultimately furnished the basis for the successful claim," Dixon,
434 F. Supp. 2d at 83-84, this Court will not reduce the total
hours expended.

### c.   Non-contemporaneous record keeping

CLF cannot recover attorneys' fees without properly
documented contemporaneous time records.  In the First Circuit,
"the absence of detailed contemporaneous time records, except in
extraordinary circumstances, will call for a substantial
reduction in any award or, in egregious cases, disallowance."
Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984).
Here, the Commonwealth asks this Court to deny any recovery for
the claimed work of two CLF volunteer attorneys because their
billing records were post hoc attempts to catalogue their work.

Volunteer attorney Leah Kelly participated in this
litigation from January to April 2008.  During that time, she
claims to have worked approximately 266 hours.  Attorney Kelly,
in her declaration to this Court, states that she has not been
able to locate her original record keeping documents and made

this time log at the request of CLF, for the purposes of this motion for attorneys' fees. See Kelly Decl. ¶ 3-4. Attorney Kelly's declaration is rife with recollections of how many hours she generally worked and that she "thought" she may have stayed late or left early on certain occasions. This type of record based on recollection cannot be considered "a full and specific accounting of . . . time." See Calhoun v. Acme Cleveland Corp., 801 F.2d 558, 560 (1st Cir. 1986). Accordingly, Attorney Kelly's claimed 266.25 hours are disallowed.

Additionally, CLF seeks compensation for volunteer attorney Wendy Miller's 412.50 hours of work on this matter. Recovery for Attorney Miller's work, however, suffers from the same deficiency as that of Attorney Kelly: she did not keep a contemporaneous record of her billable hours. See Miller Decl. ¶ 4. For the same reasons articulated above, Attorney Miller's hours are disallowed.

### d. Block billing

Shearman & Sterling billed their time using the block-billing method. "'Block billing' can be defined as the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Torres-Rivera v. Espada-Cruz, No. 99-1972, 2007 WL 906176, at *2 (D.P.R. Mar. 22, 2007) (citing Robinson v. City of Edmond, 160 F.3d. 1275, 1283 n.9

15

(10th Cir. 1998)), rev'd on other grounds, 524 F.3d 331 (1st Cir. 2008). This Court disfavors block-billing, as it requires "decipher[ing]." Marrotta, 726 F. Supp. 2d at 7 n.7.

The Commonwealth suggests that this Court apply a global reduction of twenty percent to the hours claimed by Shearman & Sterling. Such global reductions have been upheld by the First Circuit. See Torres-Rivera, 524 F.3d at 339-40. After examination of the block-billed records of the Shearman & Sterling attorneys, this Court accepts the Commonwealth's reasonable suggestion that the overall time billed for each attorney be reduced by twenty percent. Cf. Sea Spray Holdings, Ltd. v. Pali Fin. Group Inc., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) ("Because of . . . the inherent difficulties the Court would encounter in attempting to parse out reasonable hours and manpower for appropriate tasks, the Court finds that a fifteen percent 'flat' reduction of fees . . . is warranted."); Torres-Rivera, 2007 WL 906176 at *2 ("A review of the case law reflects that the method most often used to compensate for block billing is a flat reduction of a specific percentage from the award."). This twenty percent global reduction will be applied after the specific deductions discussed below.

### e. Excessive billing

The Commonwealth further argues that Shearman & Sterling engaged in overstaffing and excessive billing. A party's "claim

16

that several lawyers were required to perform a single set of tasks [is treated with] healthy skepticism." Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992). The presence of multiple attorneys either in conference or in the courtroom when one would suffice may be discounted. Hart v. Bourque, 798 F.2d 519, 523 (1st Cir. 1986). Shearman & Sterling requests compensation for a total of 1,114 hours worked by five attorneys and one paralegal. Padilla Decl., Ex. A, at 2, ECF No. 120-1. The Court agrees with the Commonwealth that this number is inflated due to redundant and unnecessary billing.

Four attorneys and a paralegal all billed time for trial observation; none of them had any speaking part. Billing for observation is inappropriate. Although the attorneys observing the trial gain knowledge of trial technique and practice, their presence in the courtroom is inconsequential to the trial. Because attorneys' fees ought be granted sparingly, time billed for trial observation cannot be considered a cost which ought be borne by the losing party. After reviewing the submitted time logs, the Court determines that the following hours ought be deducted from Shearman & Sterling staff members: 20 hours from Paralegal Diaz, 20 hours from Attorney Schmid, 16 hours from Attorney Whitener, 8 hours from Attorney Padilla, and 4 hours

from Attorney Halfnight.[3]

Additionally, the Shearman & Sterling attorneys spent an inordinate amount of time conferring among themselves regarding certain research topics. "[C]onferencing, to a significant but not excessive extent, [is] simply a necessary element of managing . . . litigation competently." Rosie D. ex rel. John D. v. Patrick, 593 F. Supp. 2d 325, 332 (D. Mass. 2009) (Ponsor, J.). Thus, not all internal conferencing ought be deducted. Excessive conferencing, however, cannot be a cost forced upon the Commonwealth. Because the Shearman & Sterling billing entries are block billed, it is impossible to discern the exact amount of time spent conferencing. This Court is content that the twenty-percent flat rate reduction discussed above accounts for the excessive conferencing.

### f. Administrative and clerical tasks

"Fees for work done by secretaries and administrative staff are not compensable," as they are "considered part of the overhead included in counsel's fee." McLaughlin by McLaughlin v. Boston Sch. Comm., 976 F. Supp. 53, 66, 69 (D. Mass. 1997) (Garrity, J.). Whether performed by attorneys or legal

---

[3] Due to Shearman & Sterling's block billing, it is impossible to determine exactly how many hours each person spent observing trial. Therefore, because the Court sits on trial from 9 a.m. to 1 p.m. each day, four hours were deducted from each person for each day on which their block billing included any trial attendance.

assistants, purely administrative work ought be either eliminated or paid at lower rates. See, e.g., Lipsett, 975 F.2d at 939-40.

Attorneys Liebman and Kilian billed time for non-legal tasks. "[C]lerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them." Id. at 940 (citing Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989)). Attorney Liebman billed for "send[ing] clients copies of MHD docs," "prep[aring] list of items requested from opposing expert," prepar[ing] documents for pickup," "schedul[ing] a depo," "organization," and "admin issues," among other similar entries, for a total of 5.5 hours. See Kilian Decl., Ex. A, at 13-20, ECF No. 119-1. This Court will allow this time to be compensated at half Attorney Liebman's normal rate. See Lipsett, 975 F.2d at 938 ("[Non-legal] hours should not be completely eliminated but should be compensated at a less extravagant rate."). Similarly, Attorney Kilian billed one hour for calls to the Boston Globe. "Reported federal cases are unanimous in denying awards of attorneys' fees for media-related time . . . ." McLaughlin, 976 F. Supp. 72. Accordingly, this time is disallowed.

CLF claims fees for work done by Yan Au as a legal assistant or office manager. All of Mr. Au's logged work is clerical in nature. For example, Mr. Au's time log includes tasks such as "copying discovery docs," "logistics prep," "organizing," and

"scanning." See Kilian Decl., Ex. A, at 23. Fees for such administrative work must be denied.

CLF also requests compensation for work done by paralegal Rebekah Pazmino. Ms. Pazmino's time entries are a collection of clerical and administrative tasks with minimal legal work. Only 8 of her 79.50 hours contained legal work. In those entries, she helped analyze emails disclosed by the Commonwealth. All other entries were clerical as she helped organize discovery material. Id. at 21. Accordingly, 8 of Ms. Pazmino's hours are recoverable. See Lipsett, 975 F.2d at 938.

CLF seeks the recovery of fees for work done by its legal interns. The vast majority of the work done by these interns was clerical or unnecessary. Intern Omar Gonzalez-Pagan billed 119 hours. Only 49.75 of these hours can be considered legal work such as "Worked of Pls Motion for Judicial Notice" and "Finalized Memo re: motion for attorneys fees." Kilian Decl., Ex. A, at 25. All other claimed hours were either spent observing trial, organizing exhibits, or compiling briefs. Accordingly, 49.75 hours of Mr. Gonzalez-Pagan's work are recoverable.

All of Intern Danica Anderson's billed hours are non-recoverable as the tasks were either clerical, unnecessary, excessive, or vaguely described. She billed time for "g[etting] up to speed on MHD trial" and "prepp[ing] & attend[ing] trial." Id. at 24. Other entries are likewise too vague to be

20

recoverable.  They include 16 hours for "memos" and 42.50 hours
of "post-trial filing cleanup, memos on closure order & next
steps."  <u>Id.</u>

Intern Bryan Berge spent approximately 34 hours researching
and writing a memo regarding a preliminary injunction from July,
22, 2009 to July 31, 2009.  <u>Id.</u> at 26.  While this may not be the
most efficient exemplar of legal research and writing, Mr. Berge
was an intern.  He spent all his logged time performing legal
work.  This court will compensate CLF for all of Mr. Berge's
reported hours.

Lastly, Shearman & Sterling seeks recovery for work done by
Paralegal James Diaz.  Mr. Diaz's time logs primarily consist of
clerical tasks such as "coordinating preparation of trial
exhibits" and "organiz[ing] binders and documents for trial."
Padilla Decl., Ex. A, at 7, 13, ECF No. 120-1.  This cannot be
considered legal work.  Thus, CLF will not recover for any work
done by Diaz.

### g.  Travel expenses

Both Attorneys Kilian and Liebman billed for their travel
time.  <u>See</u> Kilian Decl., Ex. A, at 8-20.  Attorney Kilian billed
61.5 hours for travel between Vermont and Boston, <u>id</u>. at 8-12,
while Attorney Leibman billed 5 hours for travel to the CLF New
Hampshire Office, <u>id.</u> at 13.  If an attorney is simultaneously
traveling and working on the case, the attorney may be

compensated at his normal rate.  See <u>Ryan</u> v. <u>Raytheon Data Sys.</u>
<u>Co.</u>, 601 F. Supp. 243, 256 (D. Mass. 1984) (Keeton, J.).  If the
attorney is merely traveling and not working on the case,
however, courts in this circuit normally reduce the rate charged
by fifty percent.  <u>See id.</u>; <u>see also</u> <u>Maceira</u> v. <u>Pagan</u>, 698 F.2d
38, 40 (1st Cir. 1983); <u>Chestnut</u> v. <u>Coyle</u>, No. 99-10236, 2004 WL
438788, at *3 (D. Mass. Mar. 09, 2004) (Zobel, J.); <u>Horney</u> v.
<u>Westfield Gage Co.</u>, 227 F. Supp. 2d 209, 216 (D. Mass. 2002)
(Neiman, M.J.).  Here, Attorneys Liebman and Kilian only
documented that they traveled for purposes of this case, not that
any substantive work was performed during the travel.  Thus, this
Court will reduce by half the rate at which the hours spent
traveling will be compensated.

**2.   Summary of hours to be compensated**

Based on the above determinations, Table 2, below, indicates
the number and type of hours for which each attorney, paralegal,
and legal intern will be compensated.

Table 2

| Name | Position | Hours Requested | Hours Granted |
|---|---|---|---|
| **Conservation Law Foundation** | | | |
| Carol Lee Rawn | Staff Attorney | 193.25 | 193.25 |
| Chris Kilian - Legal | Senior Attorney | 1063.92 | 233.42 |
| Chris Kilian - Other[4] | Senior Attorney | N/A | 61.50 |
| Cynthia Liebman - Legal | Staff Attorney | 797.01 | 786.51 |
| Cynthia Liebman - Other | Staff Attorney | N/A | 10.50 |
| Rebekah Pazmino | Paralegal | 79.50 | 8.00 |
| Summer Zeh | Legal Intern | 97.00 | 97.00 |
| Yan Au | Staff Assistant | 137.50 | 0 |
| Danica Anderson | Legal Intern | 173.50 | 0 |
| Omar Gonzalez-Pagan | Legal Intern | 119.00 | 49.75 |
| Bryan Berge | Legal Intern | 34.00 | 34.00 |
| Adrienne Bossi | Legal Intern | 53.00 | 53.00 |
| Leah Kelly | Volunteer Attorney | 266.25 | 0 |
| Wendy Miller | Volunteer Attorney | 412.50 | 0 |
| **Shearman & Sterling** | | | |
| Christopher Halfnight | Associate | 138.90 | 107.92 |
| John Padilla | Associate | 314.40 | 245.12 |
| Kathleen Schmid | Associate | 162.20 | 113.76 |
| Owen Russell | Associate | 134.60 | 107.68 |
| Robert Whitener | Associate | 115.90 | 79.92 |
| James Diaz | Legal Assistant | 248.00 | 0 |

3.    **Reasonable rates**

a.    **Boston rates**

The Court must next determine reasonable rates at which the above-identified individuals will be compensated for the hours they worked on this case.  A reasonable rate is one which is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Porter v. Cabral, No. 04-11935, 2007 WL 602605, at *12 (D. Mass. Feb. 21, 2007) (Woodlock, J.) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).  "[The] [p]laintiff bears the burden of justifying the reasonableness of the

---

[4] "Other" includes hours spent traveling and attorney hours spent on non-legal tasks.

requested rates by producing evidence of the prevailing market rate." Id.

In attempting to meet this burden, CLF has provided the Court with affidavits from two attorneys at large Boston law firms. See Decl. Ana M. Francisco, ECF No. 119-2; Aff. William J. Curry, ECF No. 119-3. These affidavits aver that the hourly rate for commercial litigators in the Boston area range from $150 to $990 per hour based on the experience of the individual attorney. They also opine that the rates requested by CLF and Shearman & Sterling attorneys for the work done on this case are reasonable.

The Court, however, finds these affidavits unconvincing. CLF has provided no reason why the rates charged by commercial litigators are relevant to reasonable rates for this litigation under the Clean Water Act. In fact, courts in the First Circuit that have addressed the issue of reasonable rates for Boston attorneys in litigation more similar to the present case have awarded fees well below CLF's requested rates. See, e.g., Cerqueira v. American Airlines, Inc., 484 F. Supp. 2d 241, 250 (D. Mass. 2007), rev'd on other grounds, 520 F.3d 1 (1st Cir. 2008); United States Pub. Interest Research Grp. v. Stolt Sea Farming, Inc., 301 F. Supp. 2d 46, 48-49 (D. Me. 2004) (approving rates ranging from $170 to $310 per hour for Clean Water Act litigation). Accordingly, this Court rules that the rates

requested by CLF are not reasonable rates for attorneys working on this type of litigation in the Boston market.

In line with the above cited cases, this Court holds that the following Boston rates apply to the CLF attorneys: senior attorneys will be compensated $310 per hour for legal work; assisting or staff attorneys, will be compensated $175 per hour for legal work; paralegals and legal interns will be compensated $75 per hour for legal work.  Among CLF attorneys, Attorney Kilian is considered a senior attorney; Attorneys Lee Rawn and Liebman are considered assisting or staff attorneys.  All remaining CLF personnel are considered paralegals or legal interns.

### b.    Shearman & Sterling

CLF argues that Shearman & Sterling attorneys should be compensated using reasonable New York market rates, rather than the above-determined Boston market rates.  Pls.' Mem. 13-14.  The Court rejects this argument.  "Under First Circuit law, there is a presumption that the proper rate to be applied to the work of out-of-town counsel is that of the forum community, rather than that which the attorney charges in the community in which he or she practices."  <u>Vieques Conservation & Historical Trust, Inc.</u> v. <u>Martinez</u>, 313 F. Supp. 2d 40, 46 (D.P.R. 2004) (Garcia-Gregory, J.).  An out-of-town specialist may be entitled to a higher hourly rate if a similar specialized lawyer would not have been

available in the forum community.  See Maceira, 698 F.2d at 40.

CLF, however, has made no showing that Shearman & Sterling

possessed any special expertise relevant to this case or that any

such specialization was not available among Boston attorneys.

Accordingly, the Shearman & Sterling attorneys who assisted CLF

in its litigation will be compensated at the Boston rate for

assisting attorneys identified above.

###    C.    Fee Award

Per the above determinations, CLF is entitled to recover

attorneys fees as set forth in Table 3 below.

Table 3

| Name | Position | Allowed | Hourly | Fee Amount |
|---|---|---|---|---|
| **Conservation Law Foundation** | | | | |
| Carol Lee Rawn | Staff Attorney | 193.25 | $175 | $33,818.75 |
| Chris Kilian – Legal | Senior Attorney | 233.42 | $310 | $72,360.20 |
| Chris Kilian – Other[5] | Senior Attorney | 61.50 | $155 | $9,532.50 |
| Cynthia Liebman – Legal | Staff Attorney | 786.51 | $175 | $137,639.25 |
| Cynthia Liebman – Other | Staff Attorney | 10.50 | $88 | $924.00 |
| Rebekah Pazmino | Paralegal | 8.00 | $75 | $600.00 |
| Summer Zeh | Legal Intern | 97.00 | $75 | $7,275.00 |
| Yan Au | Staff Assistant | 0 | $75 | $0.00 |
| Danica Anderson | Legal Intern | 0 | $75 | $0.00 |
| Omar Gonzalez-Pagan | Legal Intern | 49.75 | $75 | $3,731.25 |
| Bryan Berge | Legal Intern | 34.00 | $75 | $2,550.00 |
| Adrienne Bossi | Legal Intern | 53.00 | $75 | $3,975.00 |
| Leah Kelly | Volunteer Attorney | 0 | $175 | $0.00 |
| Wendy Miller | Volunteer Attorney | 0 | $175 | $0.00 |
| Subtotal – Conservation Law Foundation | | | | $272,405.95 |
| **Shearman & Sterling** | | | | |
| Christopher Halfnight | Associate | 107.92 | $175 | $18,886.00 |
| John Padilla | Associate | 245.12 | $175 | $42,896.00 |
| Kathleen Schmid | Associate | 113.76 | $175 | $19,908.00 |
| Owen Russell | Associate | 107.68 | $175 | $18,844.00 |
| Robert Whitener | Associate | 79.92 | $175 | $13,986.00 |
| James Diaz | Legal Assistant | 0 | $75 | $0.00 |
| Subtotal – Shearman & Sterling | | | | $114,520.00 |
| **Total Fees** | | | | **$386,925.95** |

---

[5] "Other" includes hours spent traveling and attorney hours
spent on administrative tasks.

**D. Costs**

CLF is also entitled to recover the reasonable costs of its litigation.  To compensate for money expended by both CLF and Shearman & Sterling, CLF requests total costs of $97,911.  Pls.' Mem. 15.  These requested fees cover transcripts and filing fees, expert witnesses, travel, legal research, and administrative costs.  The Court addresses each of these categories below.

### 1. Transcripts and filing fees

The Commonwealth does not dispute CLF's request to be reimbursed for the cost of obtaining transcripts of depositions and court proceedings and the original cost of filing this suit. See Defs.' Mem. Opp'n 20.  CLF has also included on its list of costs the fees paid by several attorneys in order to appear pro hac vice in this matter.  This Court will not reimburse those fees, as they are properly borne by those attorneys. Accordingly, the Court awards a total of $2,611.45 for money CLF expended on transcripts and filing fees.

### 2. Expert Witnesses

Under the Clean Water Act, a prevailing party is entitled to recover "costs of litigation (including reasonable attorney and expert witness fees)."  33 U.S.C. § 1365(d).  Here, CLF made use of two experts, Dr. Vladimir Novotny and Mr. Tom Schueler.  CLF and Shearman & Sterling paid these experts a total of $44,012.96. The Commonwealth argues that this amount should be reduced

because of the "limited success" achieved by CLF.  <u>See</u> Defs.'
Mem. Opp'n 20.  As discussed above, however, this Court declines
to discount the amount recovered by CLF due to the unsuccessful
aspects of its litigation.  CLF's core theory dominated the
litigation and ultimately prevailed.  It therefore is entitled to
recover the full $44,012.96 that it spent on expert fees.

### 3.  Travel Expenses

Attorneys from both Shearman & Sterling and CLF request
reimbursement for travel expenses.  Shearman & Sterling requests
$13,181.59 for money spent to travel to Boston for various court
dates.  This Court rejects these costs since they were not
necessary to the litigation.  As an exemplar, Shearman & Sterling
sent four attorneys and a paralegal to Boston for four days of
the trial in May 2007.  Each of these individuals stayed in the
Hilton hotel in Boston for at least four nights.  None of the
attorneys from Shearman & Sterling spoke at trial; most of them
merely observed the proceedings.  Although such observation is
certainly valuable to the education and development of attorneys,
it is not the responsibility of the Commonwealth to pay for such
education.  Thus, this Court declines to award any compensation
for travel expenses paid by Shearman & Sterling.

CLF attorney Chris Kilian also requests reimbursement for
travel expenses.  The requested reimbursement covers both travel
on dates of proceedings before this Court and trips on other

days, presumably to go to the CLF Boston office.  Attorney Kilian
is already being reimbursed for his time spent traveling from his
Vermont office to Boston and is being compensated at the Boston
rate rather than the lower Vermont rate.  This Court will not
reimburse him for travel expenses when he was traveling merely to
confer with his colleagues or to visit the CLF Boston office.
The Commonwealth ought not suffer additional liability because
CLF chose to use a Vermont attorney to work on a Boston case.

Attorney Kilian is, however, entitled to reimbursement for
the travel that was necessary in order for him to attend sessions
of this Court.  Reviewing the expense logs submitted by CLF, this
Court determines that Attorney Kilian incurred a total of
$2,442.97 in travel expenses in order to appear before this
Court.  He is therefore entitled to recover this amount.

### 4. Legal research

Shearman & Sterling documents a total of $10,650.70 spent on
legal research services such as Westlaw and LexisNexis.  Under
First Circuit law, "computer-assisted research should be . . .
reimbursed under attorney's fee statutes . . . so long as the
research cost is in fact paid by the firm to a third-party
provider and is customarily charged by the firm to its clients as
a separate disbursement."  InvesSys, Inc. v. McGraw-Hill Cos.,
Ltd., 369 F.3d 16, 22 (1st Cir. 2004).  Accordingly, CLF is

entitled to recover $10,650.70 for money Shearman & Sterling spent on legal research.

### 5. Administrative costs

Both CLF and Shearman & Sterling request reimbursement for administrative expenses, including photocopying, postage, and office supplies.[6]  Such costs are properly considered the overhead associated with running a law firm, and this Court considers them included in the hourly rates paid to the attorneys.  Therefore, CLF will receive no reimbursement for these expenses.

### 6. Total costs

In light of the above, this Court finds that CLF is entitled to recover a total of $59,718.08 in litigation costs.

---

[6] CLF also requests $889 for temporary paralegals that were hired for two weeks in December 2007 and January 2008.  No time logs are provided regarding what these paralegals worked on during their time at CLF, so this Court declines to reimburse CLF for this amount.

## IV. CONCLUSION

For the foregoing reasons, CLF's Motion for Interim Award of Costs of Litigation, ECF No. 117, is ALLOWED.

The defendants shall compensate the plaintiffs in the amounts of $386,925.95 for attorneys' fees and $59,718.08 for litigation costs.

**SO ORDERED.**

 /s/ William G. Young
William G. Young
United States District Judge